IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| IVORY FRANKLIN | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:11-CV-533 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On October 13, 2011, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. On July 24, 2013, the undersigned issued a Report and Recommendation as to the disposition of the case. On July 29, 2013, pursuant to 28 U.S.C. § 636(c) and the consent of the parties, the case was transferred to the undersigned for jurisdiction in all matters. No party has filed an objection to the original Report and Recommendation. Accordingly, the Court hereby issues this final Memorandum Opinion and Order as to the disposition of this case.

**I. HISTORY**

On June 24, 2008, Plaintiff filed a Title II application for a period of disability and disability insurance benefits; on June 23, 2008, she also protectively filed a Title XVI application for supplemental security income benefits. *See* Transcript ("Tr.") at 21 (Administrative Law Judge ("ALJ") decision). In both applications, she alleged disability beginning February 25, 2004. *Id*. Both were denied initially on August 4, 2008. *Id*. They were denied on reconsideration on October 22, 2008. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on

April 24, 2009. *Id*. at 21, 37-63 (transcript of administrative hearing). Plaintiff appeared and testified, represented by counsel. *Id*. A vocational expert, Charles E. Smith, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on September 8, 2009, *id*. at 18-36, and Plaintiff sought review. On August 11, 2011, the Appeals Council denied review. Tr. at 1. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff then filed the instant action for review by this Court.

## II.  STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. See *Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 11055th (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even

2

if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the

record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). An affirmative answer at Step

4

One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

The procedure for evaluating a mental impairment is set forth in 20 C.F.R. §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. *Id.*, §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id.*, §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three categories above, and is "none" in the fourth category, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.*, §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. *Id.*, §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a

5

Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3) ] ." *Id.*, §§ 404. 1520a (d)(3), (e)(2), 416.920a (d)(3), (e)(2).

### III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his September 8, 2009, decision:

The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

The claimant has not engaged in substantial gainful activity since February 25, 2004, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

The claimant has the following severe impairments: Hepatitis C virus, hypertension, hypothyroidism, arthritis, gastroesophageal reflux disease, and bipolar disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except an inability to perform more than frequent climbing ramps/stairs; an inability to climb ladders/ropes/scaffolds; the ability to perform no more than frequent balancing, stooping, kneeling, crouching; an inability to crawl; a moderately limited ability to understand, remember & carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting.

The claimant is capable of performing past relevant work as a certified nurse's aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).[1]

---

[1] The ALJ therefore terminated the sequential evaluation process at Step Four. However, he noted that "even if the claimant were limited to light duty work, with lifting/carrying no more than 20 pounds occasionally and 10 pounds frequently, she would have transferable skills

6

The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2004, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

Tr. at 23, 25, 35, 36. The ALJ determined that Plaintiff was not disabled under sections 216(I) and 223(d) (period of disability and disability insurance benefits) or section 1614(a)(3)(A) (supplemental security income benefits) of the Social Security Act. Tr. at 36.

## IV. DISCUSSION AND ANALYSIS

Plaintiff asserts she cannot work because of her "Arthritis/thyroid/hepatitis c/[high blood pressure]/liver disease." Tr. at 150 (undated Disability Report - Adult). She stated that these conditions limit her ability to work because she is "not able to function." *Id*. (amended from all capitals). She subsequently reported she had experienced no changes to her conditions, but reported a "new illness" as of 2007, specifically that "I was told I was bipolar." *Id*. at 191 (undated Disability Report - Appeal). In a later report, she stated she had experienced no further changes, new limitations, or new illnesses or conditions. *Id*. at 206 (second undated Disability Report - Appeal).

At the administrative hearing, Plaintiff testified that she has problems with her blood pressure, an overactive thyroid, hepatitis C and arthritis. Tr. at 41. She is being treated for her blood pressure and thyroid conditions, but is not taking any medicine for her hepatitis and arthritis. *Id*. She is also being treated for bipolar disorder. *Id*. at 42. She testified she had been working for 10 or 15 years as a certified nurse's assistant, but stopped in 2004 when she got sick with her thyroid and had to have gall bladder surgery. *Id*. She sees at least two physicians regularly; she previously was seeing a counselor but is now on a waiting list for the counselor again because of the counselor's overload.

---

which would allow her to perform the job duties of a companion [Dictionary of Occupational Titles ("DOT") job code 209.667-010] as generally performed in the national economy. Thus a finding of not disabled would be made at the fifth step of the sequential evaluation based on the opinion of the vocational expert, relied upon by the undersigned." Tr. at 35.

7

*Id*. at 43. She is taking Abilify, Depakote and Lamictal for her bipolar disorder. *Id*. She also takes medications for her thyroid and blood pressure conditions, but has to time the pills separately each morning due to dosage requirements. *Id*. at 44. She sleeps a lot during the day due to the bipolar medications, but has no side effects from other medications. *Id*. at 44-45. She used to get panic attacks where she would "fall out" and things would "go black," but her bipolar medications prevent that now. *Id*. at 45. She testified she takes her medication as prescribed. *Id*. She goes to church occasionally but otherwise stays home and avoids people. *Id*. at 46. "I don't interact with people that well anymore[.]" *Id*. She does not drive and has not had a drivers' license since sometime in the 1990s. *Id*. at 46-47. She also testified as to her activities of daily living.

Plaintiff asserts two issues: (1) the ALJ failed to include all of the mental limitations from the opinion of the state agency medical consultants and resultantly did not include all of her limitations in the hypothetical questions he posed to the vocational expert (Pltf Brf at 10-11; and (2) the ALJ failed to fully develop the record (*id*. at 18).

### A.   ALJ's Step Four Determination

The ALJ determined at Step Four that, given Plaintiff's RFC, she could return to her past relevant work as a certified nurse's assistant. "[W]hen making a finding that an applicant can return to [her] prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of [her] previous work." *See Latham*, 36 F.3d at 484 (citing 20 C.F.R. § 404.1520(e)). The ALJ "must make clear factual findings on that issue." *Id*. (citing *Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988) (per curiam)). Here, the ALJ came to that determination based on the testimony of the vocational expert during the administrative hearing.

However, Plaintiff contends that the ALJ failed to include all of the mental limitations assessed by the state agency psychiatrist into his determination of Plaintiff's RFC and therefore failed to pose a complete hypothetical question, composed of all of those limitations, to the vocational expert at Step Four. Accordingly, Plaintiff contends, the vocational expert's testimony does not constitute substantial evidence upon which the ALJ could rely in his Step Four determination.

The ALJ addressed certain mental limitations in his determination of Plaintiff's RFC, including:

> . . . a moderately limited ability to understand, remember & carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting.

Tr. at 25.

The parties do not dispute that the ALJ relied primarily on a state agency psychiatrist's overall review and adopted her assessment of Plaintiff's mental impairment as the mental RFC statement in his decision. *See* Tr. at 34 (affording "significant weight" to the Mental Residual Functional Capacity Assessment opinion by Leela Reddy, M.D., Tr. at 306-09, and stating that with two specific exceptions, "the moderate limitations assessed by the state agency have been adopted.").

In detail, Dr. Reddy opined that Plaintiff has moderate limitations in the following areas (listed by Mental RFC Assessment form item number):

- A.3. The ability to understand and remember detailed instructions

- B.5. The ability to carry out detailed instructions.

- B.6. The ability to maintain attention and concentration for extended periods.

- B.9. The ability to work in coordination with or proximity to others without being distracted by them.

> B.11. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
> C.14. The ability to accept instructions and respond appropriately to criticism from supervisors.
>
> D.17. The ability to respond appropriately to changes in the work setting.

Tr. at 306-07. Dr. Reddy then summarized her own findings, including the passage forming the basis of Plaintiff's challenge in this claim, to opine as to the Plaintiff's ultimate mental functional capacity:

> The claimant can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions & respond appropriately to changes in routine work setting.

Tr. at 308 (amended from all capitals). With minor changes in formatting and punctuation, this statement of mental residual functional capacity is identical to the formulation the ALJ used in his decision. *Compare* Tr. at 308 *with* Tr. at 25.

Plaintiff takes issue with the specific line item of "moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them," item B.9. Pltf Brf at 16 (citing Tr. at 306). She asserts that although the ALJ explicitly adopted Dr. Reddy's findings, the ALJ did not either incorporate that limitation into his expression of her mental RFC, nor did he discuss and provide rationale for having rejected that particular criterion.

Complicating the issue is that the ALJ did discuss and reject two of the moderate limitation criteria in Dr. Reddy's opinion, namely, the items listed as numbers B.11. and C.14., above. Tr. at 34 ("The state agency assessed a moderately limited ability to sustain an ordinary routine without special supervision[2] and a moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

---

[2] This statement of moderate limitation does not exactly track item number B.11., but that is the closest possible match of the items listed. Plaintiff asserts, and the Court agrees, that item B.11. is the limitation to which the ALJ was referring in this statement.

10

without an unreasonable number and length of rest periods, but the Administrative Law Judge does not find these two specific limitations to be well supported."). Nonetheless, the ALJ still included a moderate limitation as to Plaintiff's ability to "accept instructions," a central element of item B.11., very similar in format as to Dr. Reddy's summary of mental functional limitations.

The Commissioner contends that in "adopting" Dr. Reddy's opinion, the ALJ simply adopted the summary assessment. Comm'r Brf at 6-7. The Court finds that it appears the ALJ did base his RFC determination on Dr. Reddy's summary. Notwithstanding, the result is incomplete and unpersuasive, in that the ALJ explicitly rejected the two criteria discussed above. Every other line item criterion was either addressed and rejected, or was adopted in summary form. Accordingly, the ALJ's mental RFC assessment is an incomplete compilation of Dr. Reddy's opinions, even if based on Dr. Reddy's own, also incomplete, summation.

Following this line of argument, Plaintiff also asserts that the RFC-based hypothetical question the ALJ posed to the vocational expert continued to omit the moderate limitation in the ability to work with others without distraction. *See* Tr. at 58-61 (including hypothetical questions with greater or lesser exertional and non-exertional limitations, but none incorporating the limitation stated in item B.9.).

Use of a vocational expert in a Social Security disability determination most often occurs at Step Five of the sequential evaluation process. However, an ALJ may also rely on the testimony of a vocational expert at Step Four.[3] *See*, *Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 318 (5th Cir. 2003) (per curiam) (approving use of a vocational expert to supply information about a plaintiff's past work) (citing *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001), *Leggett v. Chater*, 67 F.3d 558, 563-

---

[3] As noted above, here, the ALJ not only employed the vocational expert for his Step Four determinations, but also to find that if it were necessary to proceed to Step Five, Plaintiff would still be capable of performing "other work" as a companion.

11

64 (5th Cir. 1995)). Nonetheless, any hypothetical question posed to the vocational expert still must be accurate.

Here, the ALJ's hypothetical question to the vocational expert omitted any reference to Plaintiff's "ability to work in coordination with or proximity to others without being distracted by them." The Fifth Circuit's test for determining when a defective hypothetical question will produce reversible error was stated in *Bowling v. Shalala*:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question . . . a determination of non-disability based on such a defective question cannot stand.

*Bowling*, *supra*, 36 F.3d at 436. In this case, Plaintiff's counsel had the opportunity to question the vocational expert. She asked,

> And if an individual, because of a diagnosed and treated bipolar condition, an individual again with the same age, education, and past relevant work experience as Ms. Franklin, because of their diagnosed and treated bipolar condition, would have significant interruptions in their ability to sustain concentration and persistence throughout the work day such that it would be difficult for them to complete a normal workday and work week without interruptions from psychologically based symptoms, what effect would that have on Ms. Franklin's past relevant work or the job of companion or any other work?

Tr. at 61. The vocational expert responded in pertinent part,

> Whenever a person, *for whatever reason*, is not able to attend and concentrate to the task at hand, then work becomes unavailable and what I usually try to say by this, if you want a time frame on it, if I am taking ten minutes an hour to be totally off-task and unavailable for work, then work becomes nonexistent.

*Id*. at 62 (emphasis added). Both counsel's question and the vocational expert's answer were broadly worded enough to embrace the potential "distraction" from working in coordination with or in proximity to others inherent in the moderate limitation stated in item B.9., above. Accordingly, because the ALJ did not pose that limitation to the vocational expert for his consideration in his answer - which could very well have included a response that Plaintiff could still perform her past

12

relevant work, even if such a response might be in conflict with the DOT - the response cannot be considered substantial evidence upon which the ALJ based his determination of non-disability.

Therefore, the decision should be remanded for the opportunity to pose an appropriate question to a vocational expert.

### B.     The ALJ's Duty To Develop The Record

Here, Plaintiff contends that the ALJ did not sufficiently develop the record when he rejected Dr. Messer's opinion responses to a questionnaire formatted as a "Medical Source Statement - Medical Assessment of Ability to do Work-Related Activities (Mental)." Pltf Brf at 18-33 (citing Tr. at 773-75). Because of the necessity to remand this case for resolution of the first issue, above, it is not necessary to address this issue any further.

It is therefore

**ORDERED** that the above-entitled social security action is hereby **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with the opinion herein.

So **ORDERED** and **SIGNED** this **8**   day of **August, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE